## PARKS vs. ALTA TELEGRAPH COMPANY.

*Sixth District Court, for Sacramento Co., Feb. T., 1858.*

### TELEGRAPH COMPANIES—CONTRACT—DAMAGES.

On the 7th of Oct. A. received a telegraphic message from B., his agent, informing him that C. had failed. At 7 o'clock P. M., same day, A. gave a telegraph company the following message : " Due $1,800; attach if you can find property ; will send note by to-morrow's stage." The message was not sent, of which A. was not informed until 9 o'clock A. M., on the 8th, when he caused it to be transmitted. B. received it at 12 M., commenced an action at 1 P. M., and gave the sheriff a writ of attachment at 6 P. M. Recovered judgment, issued execution, returned *nulla bona.* Upon writs of attachment issued by other creditors of C., about 3 P. M. on the 8th, $2,000 was realized. Other creditors of C., who issued writs of attachment on the 6th, recovered nothing. A. brought an action against the telegraph company for $1,800 damages.

*Held,* that it was gross negligence not to have informed A. until 9 A. M., of the 8th, of the non-transmission of his message ; but that no certain damages had been proven. Had damages been proven defendants would have been liable.

Tried by the court, a jury having been waived. The requisite facts are set forth in the opinion.

*G. Cadwallader*, for plaintiff.

*Hartly & Carter*, for defendant.

BOTTS, J.—On the 7th day of October, 1856, about 7 o'clock, P. M., the defendant contracted with the plaintiff, at Mokelumne Hill, for the immediate despatch of a message to the city of Stockton. The

result of the transmission of the message? Was the failure the necessary cause of its loss? Were these consequences—the securing the debt, on the one hand, its loss upon the other—so necessarily the result of the acts of commission and omission, as that they may be supposed to be in the minds of the contracting parties, and to have been impliedly included in their agreement? Suppose this message could have been transmitted only at an expense of $500; does anybody believe plaintiff would have paid it? And why not? Because the uncertainty of advantage from it was too dubious; and even as matters stood on the next morning, when the plaintiff was informed that the message had not been transmitted, the amount of injury sustained was involved to that degree, in doubt and uncertainty, that it could only be determined by suppositions and speculations, to which the law refuses to subject the rights of property.

There are difficulties in this case, even if we consider those things that occurred after the right of action accrued, for the purpose of removing the cloud that rests upon it. There was only the sum of $2,000 realized from attachments levied after the time when the plaintiff's agent could possibly have attached, had the message been duly transmitted; and this was the result of superior vigilance in the attaching creditor, who discovered property that had escaped the notice of creditors attaching on the 6th. It is not, therefore, always the earliest bird that catches the worm. Who is to determine whether the agent of the plaintiff would have been as diligent as the creditor of the 8th, or as unfortunate as the attaching creditors of the 6th?

I have been referred to a great many cases, by plaintiff's counsel, in which courts have undoubtedly crossed the line between certainty and speculation, and I am far from saying that the rule, in its literal strictness, should always be adhered to; but this I can say, that no case has been exhibited to me where any court of established reputation has indulged in such a series of speculations as would be necessary to arrive at the actual injury resulting to the plaintiff from the negligence of the defendant. It is true that anticipated profits have sometimes entered into the estimate of damages for the non delivery of goods, both by vendors and common carriers; and it might be, and has been urged, that this estimate involves more or less of speculation. This

question always occurs : would the vendee necessarily have availed himself of the top of the market ? In *New York*, and in *England*, too this is still, to some extent, a mooted question; but even where this element has been permitted to enter into the estimate of damages, it is believed that a careful examination will show that it has been confined to those cases where the article purchased, or to be delivered, was known to both parties to be intended for immediate sale in a specified market. In the celebrated marble case, reported in 7 *Hill, Masterton* v. *Mayor, &c., of Brooklyn,* (7 *Hill,* 61,) judge *Nelson* ruled out any testimony of particular contracts made by plaintiff, from which he sought to establish extraordinary profits ; the court holding that he could recover only that amount which, in the usual course of trade, he would have necessarily netted from his contract with the defendants.

Much has been said, in the argument of this cause, about the public character of the defendant, its monopoly, its privileges, and the policy of holding it, like common carriers, to the strictest accountability. I know of no difference between common carriers and other contractors, except that, as a matter of convenience, an implied assurance of the goods transported is annexed to their contract of transportation; but this in no manner affects the measure of damages for breach of contract. In no sense can he who contracts to deliver a message be an insurer ; a message has no market value to be insured ;. but he who contracts to deliver a message, or to do anything else, is responsible for all the clearly ascertained actual damage resulting from his breach of contract. The world has flattered itself that it has found a new and useful servant in the telegraph ; but I apprehend but little capital would be invested in its establishment, if its founders were to be made pecuniarily responsible for all the damage that may be remotely traced to the imperfect or defective transmission of the mysterious messages with which they are charged. By the rule the plaintiff would have us to adopt, an error in transmitting, or a failure to transmit, the single word " attach," might involve the company in total ruin.

It is possible—nay, more, it is probable that, from the negligence of the defendant, the plaintiff has lost his whole debt; but an action for damages must rest upon a basis more certain than that of possible, or even of probable injury.